UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re:                                                                    Chapter 7
                                                                          Case No. 11-76129-reg
E.D.B. CONSTRUCTION CORP.,

                              Debtor.
----------------------------------------------------------------x

ALLAN B. MENDELSOHN as Trustee of the
Estate of E.D.B. CONSTRUCTION CORP.,

                              Plaintiff,                                   Adv. Proc. No. 13-8021-reg

against

DANIEL ROALEF,

                              Defendant.
----------------------------------------------------------------x

## DECISION AFTER TRIAL

This matter is before the Court pursuant to an adversary proceeding commenced by the

Chapter 7 Trustee, Allan B. Mendelsohn ("Plaintiff" or "Trustee"), against Daniel Roalef

("Defendant"), President of the Debtor, E.D.B. Construction Corporation ("Debtor").   The

Trustee is seeking to recover funds transferred from the Debtor to the Defendant prepetition in

the total amount of $106,140.35, pursuant to 11 U.S.C. §§ 105, 544, 547, 548, and 550, as well

as New York Debtor and Creditor Law ("DCL") §§ 273-276, and pursuant to unjust enrichment

and breach of fiduciary duty theories.   As a threshold matter, the Defendant argues that the Court

lacks subject matter jurisdiction over this adversary proceeding because the funds received by

the Defendant were construction trust funds under New York Lien Law Article 3-A and as such

are not property of the Debtor's estate and not subject to recovery by the Trustee.   In the

alternative, if this Court finds that the funds transferred to the Defendant were the Debtor's

property, the Defendant argues that the Plaintiff failed to prove that the Debtor was insolvent on

the date of the transfers.    In addition, he argues that the transfers were merely expense reimbursements, which were made in the ordinary course of business, 11 U.S.C. § 547(c)(2), and for which he produced receipts matching the amounts of the Defendant's reimbursement checks.

Resolution of this adversary proceeding requires the Court first to determine whether the transferred funds were property of the Debtor.    Secondly, if such funds were property of the Debtor, whether the Trustee has satisfied his burden of proof on the causes of actions alleged in the Complaint.

The Court finds that the funds transferred to the Defendant were not trust funds subject to Article 3-A of the New York Lien Law, but rather were the Debtor's property at the time of the transfers.    The Defendant's bald assertion, without any evidentiary support, that the funds were trust funds is not sufficient to rebut the prima facie case established by the Trustee that the funds transferred from the Debtor's account were the Debtor's property.

However, on the merits of the claims alleged, the Court finds that the Trustee has failed to meet his burden to establish the elements necessary to prove the allegations set forth in the Complaint.    The Court reaches this conclusion after a careful review of the evidence introduced at trial and the testimony of the Defendant – the only witness at trial.    Ultimately the burden lies with the Plaintiff to prove his case as required by the law.    In the instant case, while the Trustee presented a prima facie case that there were transfers made to the Defendant, he failed to adequately establish that those transfers were not made for reasonably equivalent value and/or in the ordinary course of the Debtor's business.    The defense in this case is premised upon the existence of voluminous, and mostly dated, receipts for goods and services from a variety of merchants,   generally of the type which one would expect in a construction business, which matched exactly with the amount and timing of the distributions made by the Debtor to the

Defendant.    These receipts were admitted into evidence *by the Trustee*, without objection or limitation, and the Defendant testified that he in fact funded these expenses for the Debtor.  After making these receipts part of his case, the Trustee failed to present evidence that countered the Defendant's testimony other than to ask the Court to disregard the Defendant's explanation and find that it was implausible to believe that the Defendant could have funded such expenses. However, the Trustee failed to present evidence to support his theory of the case.  Absent such evidence, this Court must find that the Trustee has not sustained his burden of proof.  Therefore, the Court will enter judgment for the Defendant, dismissing the Complaint.

## PROCEDURAL HISTORY

On August 29, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.   On February 14, 2013, the Trustee filed this Complaint to recover 140 separate transfers by the Debtor to the Defendant totaling $106,140.35 within the three years prior to the Petition Date ("Complaint").  The Trustee alleges nine separate causes of action including: (1) preference liability under 11 U.S.C. § 547(b), (2) unjust enrichment, (3) fraudulent conveyance under 11 U.S.C. § 548, (4) fraudulent conveyance under § 544 and N.Y. DCL §§ 273-278, and (5) breach of fiduciary obligations to the Debtor's creditors. On March 15, 2013, the Defendant filed an answer to the Complaint asserting that this Court lacks jurisdiction over this matter or, in the alternative, that the transfers were made in the ordinary course of business.  On May 24, 2013, the Defendant filed a motion to dismiss the Complaint in its entirety arguing that the Court lacked subject matter jurisdiction pursuant to 28 U.S.C. § 157(c) because the funds transferred to the Defendant, allegedly, were trust funds pursuant to Article 3-A of the New York Lien Law.  At a hearing on the motion to dismiss held

on June 24, 2013, the Court denied the motion to dismiss without prejudice, indicating that it was premature without a sufficient evidentiary record to determine whether the transferred funds were Article 3-A trust funds.

On September 20, 2013, the Trustee and the Defendant filed a Joint Pretrial Memorandum. The Court conducted a trial on September 30, 2013. The Defendant testified at trial and there were no other witnesses. Pursuant to the Joint Pre-Trial Memorandum, the Plaintiff's Exhibits 1-183 were admitted into evidence. The Trustee and the Defendant filed post-trial briefs on October 9, 2013 and October 18, 2013, respectively. Thereafter, the adversary proceeding was marked submitted.

## FACTS

In July 2009, the Defendant formed the Debtor, a New York corporation engaged primarily in the framing business for residential construction. The principals of the Debtor were the Defendant, Edward Belanger, Jr. and Robert Delaney. Trial Transcript ("Trial Tr."), p. 14, 69. The Defendant originally held a 25% interest, with Mr. Belanger owning 50% and Mr. Delaney owning 25%. Trial Tr., p. 9, 21. Mr. Delaney transferred his ownership interest to the Defendant in late 2010 at which time the Defendant became President of the Debtor. Trial Tr., p. 13-14, 23. In December 2010, the Defendant's ownership interest increased to 75% with Mr. Belanger owning the remaining 25%. Trial Tr., p. 30.

The record reflects that the Debtor maintained a single bank account at Astoria Federal Savings. This account was the depository for all of its revenues. Trial Tr., p. 12-13. Revenues from all the individual jobs the Debtor worked on were commingled into this single account with no record to show what funds were attributable to which job. There was no credit or debit card

linked to this account.  Trial Tr., p. 14, 22.   At first Mr. Belanger was the sole signatory on the account, but at some point the Defendant was granted signatory authority.  Trial Tr., p. 13, 21. The Defendant's salary of $1,300 per week as well as all other payroll checks were drawn on this single account. Trial Tr., p. 14-16.   Neither Mr. Belanger nor Mr. Delaney  received a salary from the Debtor.  Trial Tr., p. 23.

During the three years preceding the bankruptcy petition, the Debtor issued 140 checks to the Defendant totaling $106,140.35.  Of these 140 checks, in the year before the Petition Date, the Debtor issued 114 checks, totaling $71,730.36, to the Defendant.  The checks contained annotations that read "reimburse expense" or "reimbursement."  Plaintiff Ex. 1.  The Defendant testified that it was his practice to advance money to the Debtor's employees for supplies, gasoline, or equipment. The Defendant would then collect their receipts, submit them to the bookkeeper, and receive reimbursement from the Debtor.  According to the Defendant, expense reimbursements were funneled through him as a matter of administrative convenience – to avoid multiple reimbursement checks to multiple employees.  Trial Tr., p. 26.  After collecting these individual receipts, the Defendant would hand-write notations on the receipts either at the time of purchase or prior to submitting the receipt to the bookkeeper.  Trial Tr., p. 31-33.  The Defendant testified that he would use the reimbursed funds from one week to fund the expenses for the following week.  He testified that this was the Debtor's usual practice.  Trial Tr., p. 27.

There was no specific process for reviewing or approving these reimbursements but the Defendant stated that the bookkeeper would not issue any reimbursement check without Mr. Belanger's approval, especially in 2009 and 2010.  Trial Tr., p. 29-30.  However, once the Defendant became a 75% shareholder in the company, he did not need approval in order to get reimbursed.  Trial Tr., p. 31.  The reimbursed expenses were usually about $1,000 per week, but

sometimes totaled as much as $1,600 per week.  Trial Tr., p 24-27.  The Defendant produced

dated receipts from gas stations and vendors such as Home Depot and Lowes with dollar

amounts and dates that matched up with the Debtor's bookkeeper's calculator tapes supporting

the 140 reimbursement checks to the Defendant.  The Defendant testified that other than his hand

written notes on the receipts themselves, there is no way to track what the expenses were used

for.  There is no way to link the expenditures to specific jobs, or prove that the expenses were

incurred in the operation of the Debtor's business because there is no mention of the Debtor on

the receipts themselves.  Trial Tr., p. 28, 31-33, 45.  Plaintiff Ex. 43.  The Defendant also

testified that he does not understand the concept of a trust fund and therefore never thought

money in the Debtor's account could be trust assets.  Trial Tr., p. 19-20.

Despite the receipts produced by the Defendant, which corroborate his testimony, the

Trustee advanced the theory at trial that it is implausible to believe the Defendant, who earned

only $1,500 per week and was the sole income-provider for his household, could have advanced

$1,000+ per week for the Debtor's expenses.  The Trustee does not question that the Defendant

produced receipts that "appear to have substantiated the amounts paid to him," but believes that

the "reimbursements" were a way for the Defendant to "take more funds from the Debtor and

avoid other obligations that are associated with payroll."  Pl's Post-trial brief at 7.

## DISCUSSION

1. *Trusts under New York Article 3-A Lien Law*

Under New York Law, the funds received in connection with a contract for an

improvement in real property constitute a trust held by the contractor.  N.Y. Lien Law § 70

(McKinney 1993).  These funds must be applied to pay the cost of improvement, including

payment of subcontractors, taxes, insurance premiums, and employment benefits. *Id.* § 71(2). The trust shall continue with respect to all assets of the trust until every trust claim has been paid or discharged, at which time any remaining assets shall vest in the contractor. *Id.* § 70(3). Any transaction which constitutes a diversion of trust funds by the trustee before discharge of all the trust claims is a breach of trust. *Id.* § 72(1). The trustee is not required to keep the funds of the trusts in separate bank accounts; however the trustee must keep books or records for each trust and if the funds are commingled, keep a record of the account showing the allocation to each trust of the deposits and withdrawals therefrom. *Id.* § 75(2).

While state law determines the extent of an interest in property, bankruptcy law determines whether that interest is property of the estate. *Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337, 342 (Bankr. S.D.N.Y. 1999). "Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It is well settled law that a Chapter 7 Trustee cannot recover funds for the benefit of the estate once it has been determined that the transferred funds were trust assets, as those assets do not become property of the debtor's estate. *Ris v. Coppotelli (In re Colby Constr. Corp.)*, 76 B.R. 50, 53 (Bankr. S.D.N.Y. 1987) ("[P]roperty of the estate does not include 'any power that the estate may exercise solely for the benefit of any entity other than the debtor'") (other citation omitted). The trustee can only avoid and recover "property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceeding." *Buchwald v. Di Lido Beach Resort, Ltd. (In re McCann, Inc.)*, 318 B.R. 276, 283 (Bankr. S.D.N.Y. 2004) (quoting *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 58 (1990)). This is true even if the trust funds are diverted to a party other than a proper trust beneficiary. *Heilbronner v. Nicosia (In re Valerino Contr., Inc.)*, 250 B.R. 39, 45 (Bankr. W.D.N.Y. 2000). Therefore, a

threshold issue here is whether the transferred funds were pre-petition property of the Debtor that would have become property of the estate upon the bankruptcy filing, or whether they were funds held in trust under Article 3-A of New York's Lien Law.

Generally, a plaintiff has the burden of proof on its affirmative claim. *See* 11 U.S.C. § 547(g); *see also Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) (citation omitted); *Gowan v. The Patriot Grp., LLC (In re Dreier LLP)*, 452 B.R. 391, 436 (Bankr. S.D.N.Y. 2011). Initially, this means that the trustee must show that the transfers subject to avoidance were property of the debtor. *Dreier*, 452 B.R. at 416. The trustee must demonstrate that the debtor had legal title and control over the assets. *Schick*, 234 B.R. at 343. In the case of a commingled account involving trust assets, the trustee carries this burden by proving that the debtor had legal title to the account and the account consisted of commingled trust and personal funds. *Id.* However, the funds in a commingled account may be used to pay unsecured creditors unless a trust beneficiary can trace a superior right to those funds. Therefore, the funds in a commingled account that could have been used to pay other creditors "presumptively constitute[] property of the estate." *Id.* at 343 (citing *Danning v. Bozek (In re Buillon Reserve of N. Am.*) 836 F.2d 1214, 1217 (9th Cir. 1988)). This shifts the burden in an avoidance action involving a commingled account to the defendant. *Dreier*, 452 B.R. at 419. The defendant must then (1) show that the debtor held bare legal title and (2) trace the equitable owner's interest to the specific property at issue. *Schick*, 234 B.R. at 344.

The Defendant in this case argues that the Trustee has the burden to show that the funds transferred to him were the Debtor's property, i.e., that they were not trust funds, and relies on *Raymond AAB v. Wesco Corp. (In re Casco Elec. Corp.)*, 28 B.R. 191 (Bankr. E.D.N.Y.

1983).   In that case, Casco Electric Corporation ("Casco"), an electrical contractor, purchased materials from Westinghouse Electric Corporation ("Wesco").   Casco made three payments to Wesco totaling $6,403.52 from a commingled account during the 90 days preceding its bankruptcy filing.  *Id.* at 192.  The trustee commenced an adversary proceeding to recover these payments from Wesco as preferential payments, and Wesco argued that the funds it received were Article 3-A trust funds which could not be recovered by the trustee. *Id.*

In *Casco*, the court concluded that it was "undeniable that Casco received monies constituting trust assets," and "by the very act of payment [to Wesco, an unpaid material man], Casco identified the funds as trust assets." *Id*. at 195.  The Court also reasoned that "as between the trustee, as the representative of Casco's general creditors, and Wesco, a subcontractor  . . , the latter would have the superior right to the monies paid during the preference period if part of the funds paid Casco were from the [] projects on which Wesco's equipment was used."  *Id.* The Court also explained that bankruptcy laws should "defer to the public policy" behind statutory trusts such as those established under New York's Lien Law and not apply the preference statute "to payments made [to] subcontractors within the preference period."  *Id.* at 196.   For all of these reasons, the Court found that it was the trustee's burden to prove that the funds transferred to Wesco were property of Casco's estate and not subject to Article 3-A Lien Law.  *Id.* at 195.

The facts of the instant case are distinguishable from *Casco*.   First, there has been no evidence presented to this Court to show that the money in the Debtor's account at the time of the transfers to the Defendant were monies received on account of jobs for which there were unpaid subcontractors.   The Defendant has made an unsupported assertion that the funds in the Debtor's account on the date of the transfers were trust funds, but has not shown any specific

source of funds deposited into the Debtor's account.  Second, in order for a trust fund to exist there must necessarily have been an unpaid beneficiary or beneficiaries of that trust.  In the instant case we have no such proof of unpaid trust fund beneficiaries.  In *Casco*, the money was given by the contractor, Casco, to a specific subcontractor, Wesco, for materials supplied on job sites.  Casco was able to identify the amount of money owed to its subcontractor and paid Wesco accordingly.

The *Casco* court also recognized that while intermingling of trust funds is permitted, according to New York Lien Law, careful records must be kept for that intermingled account. *Id.* at 193 (citing New York Lien Law §75(2)).  Here, the Debtor failed to maintain any books or records for its operating account.  There is neither identification of revenue sources, nor identification of unpaid subcontractors.  The Defendant did not identify at trial any specific unpaid subcontractors.  The evidence presented in this case does not establish the indicia of an Article 3-A Lien Law trust; the Defendant failed to show either that money came in from a specific source for a job or that the Debtor owed the money in its commingled account to specific subcontractors. The Defendant has thus failed to establish the existence of a trust fund and failed to establish at trial that the Debtor held only bare legal title to the funds transferred to him.  Therefore, the Court can only conclude that the money transferred to the Defendant was the Debtor's property when transferred, and not subject to Article 3-A Lien Law.

## 2. *1st cause of action - Preference*

The Trustee seeks to recover $71,730.36 of the total $106,140.35 as preferential transfers under § 547(b).  However, the Defendant asserts that these transfers were made in the ordinary course of business, and therefore not subject to recovery by the Trustee.

**a.** *Elements of preference*

Section 547(b) states:

> (b)Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made--
>> (A) on or within 90 days before the date of the filing of the petition; or
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if--
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

This section "authorizes the Trustee to avoid a transfer which prefers one creditor over similarly situated creditors, and allows the transferee to receive more than it would have received in a chapter 7 case had the transfer not been made. *Pryor v. N.Y. State Dep't of Taxation and Fin. (In re Waring)*, 491 B.R. 324, 328 (Bankr. E.D.N.Y. 2013) (citing *Pryor v. Zerbo (In re Zerbo)*, 397 B.R. 642, 648 (Bankr. E.D.N.Y. 2008)). The Trustee bears the burden of proving each of these elements by a preponderance of the evidence. 11 U.S.C. § 547(g); *see also Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 34 (2d Cir. 1996) (citation omitted). The Defendant, however, bears the burden of proof for any affirmative defenses under § 547(c). *See* 11 U.S.C. § 547(g); *Waring*, 491 B.R. at 329.

If the transferee of funds was an insider, the Trustee may recover transfers made within one year of the petition date. 11 U.S.C. § 547(b)(4); *Tese-Milner v. Edidin and Assocs., Franklin Capital Holdings, LLC (In re Operations N.Y. LLC)*, 490 B.R. 84, 100 (Bankr. S.D.N.Y. 2013).

The term insider includes a "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general party, director, officer, or person in control of the debtor." 11 U.S.C. § 101(31)(B).

The Debtor is presumed insolvent during the ninety days preceding the bankruptcy petition. 11 U.S.C. § 547(f). However, this presumption does not extend to the entire one year period for recovery against an insider. *See Pryor v. Cohen (In re Blue Point Carpet, Inc.)*, 102 B.R. 311, 319-320 (Bankr. E.D.N.Y. 1989). Therefore, the Trustee must affirmatively show that the Debtor was insolvent between the one year and 90-day periods preceding the Petition Date. *Id.*

Here, there is no question that the Defendant was an insider of the Debtor, as he was a person in control of the Debtor, especially when he became the 75% shareholder. This means that the Trustee can avoid transfers made on account of antecedent debts up to one year before the Petition Date. During the trial, the Trustee established that during the three months prior to the Petition Date, the Debtor's vendors were not being paid and the Debtor was having financial difficulties. Trial Tr., p. 48-51. However, the Trustee failed to present any evidence as to the insolvency of the Debtor during this entire one-year period. Because the Trustee has the burden to establish all the elements of a preference, the failure to show one element prevents the Trustee from avoiding the transfers. Therefore, the Trustee failed to satisfy his burden and cannot recover the money transferred outside the 90-day period under § 547. As to the funds transferred during the 90-day period of insolvency, the Trustee's claim also fails because, as discussed below, the Defendant has successfully established an ordinary course of business defense under § 547(c)(2).

**b.** *Ordinary Course of Business Defense*

Section 547(c)(2) provides:

> (c) The Trustee may not avoid under this section a transfer
> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was-
>> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>> (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

This defense protects "recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee." *Davis v. R.A. Brooks Trucking, Co., Inc. (In re Quebecor World (USA), Inc.)*, 41 B.R. 379, 385 (Bankr. S.D.N.Y. 2013) (quoting *Official Comm. of Unsecured Creditors of Enron Corp. v. Martin (In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 459 (Bankr. S.D.N.Y. 2007)).  The purpose of the exception is to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or [its] creditors during the debtor's slide into bankruptcy." *Roblin*, 78 F.3d at 41 (quoting H.R.Rep No. 95-595 (1978)).

In order to prevail, a defendant must prove either the subjective test under § 547(c)(2)(A), or the objective test under § 547(c)(2)(B). *Davis v. All Points Packaging & Distrib., Inc. (In re Quebecor World (USA), Inc.)*, 491 B.R. 363, 368 (Bankr. S.D.N.Y. 2013).  To determine whether a transfer was in the ordinary course of business under § 547(c)(2)(A), courts look at several factors including: (i) prior course of dealings of the parties; (ii) the amount of the payment; (iii) the manner of the payment; and (iv) whether the payment was the result of any

13

pressure by the creditor or favoritism by the debtor. *Cellmark Paper, Inc. v. Ames Merch. Corp. (In re Ames Dep't Stores, Inc.)*, 470 B.R. 280, 284-85 (S.D.N.Y. 2012) (citation omitted).

The Defendant testified at trial, and produced ample receipts to support this testimony, that it was the ordinary course of business that he would lay out funds to pay day-to-day expenses of the Debtor's operations, and the Debtor would then reimburse those funds to him. All of the reimbursements during the year prior to the Petition Date were in line with the parties' prior course of dealings, as well as approximately the same amount and manner of payments. Trial Tr., p. 30.  There were no differences in the payments made during the preferential period and those made in the prior years that the Debtor operated.  The Defendant testified that this was a practice he was accustomed to from the years of doing business with his partner, Mr. Belanger. Trial Tr., p. 26-27.  The Trustee did not present any evidence to refute the Defendant's assertions.

Thus, the Court finds that the Defendant sustained his burden of proving that the transfers at issue were subjective ordinary course of business transactions which are not subject to avoidance under § 547(b).

## 3. *3rd through 6th causes of action - Fraudulent Transfer*

The Trustee seeks to avoid the entire $106,140.35 based on theories of actual fraud under § 548(a)(1)(A) and DCL § 276, as well as constructive fraud under § 548(a)(1)(B) and DCL §§ 273-275.

### a. *Actual Fraud*

Section 548(a)(1)(A) provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in

property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted;

11 U.S.C. § 548(a)(1)(A).

DCL § 276 similarly states that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."  N.Y. Debt. & Cred. § 276 (McKinney 2001).  This overlaps with § 548(a)(1)(A).  *Barnard v. Albert (In re Janitorial Close-Out City Corp.)*, No. 11-8952, 2013 WL 492375, at *5 (Bankr. E.D.N.Y. Feb. 8, 2013).  To prove actual fraud under § 276, a creditor must show intent to defraud on the part of the transferor.  The burden of proving actual intent is on the party seeking to set aside the conveyance.  *Sharp,* 403 F.3d at 56 (citation omitted); *see also Kittay v. Flutie N.Y. Corp. (In re Flutie N.Y. Corp.)*, 310 B.R. 31, 56 (Bankr. S.D.N.Y. 2004).

Since actual intent is hard to prove directly, courts use "badges of fraud" to help infer such intent.  *Salomon v. Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983).  These badges of fraud include: (1) lack or inadequacy of consideration; (2) family, friendship or close associate relationship between the parties; (3) retention of possession, benefit, or use of the property in question; (4) financial condition of the party sought to be charged both before and after the transaction in question; (5) existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) general chronology of the events and transactions under inquiry.  *Flutie*, 310 B.R. at 56 (citation omitted).  The existence of multiple badges of fraud can

constitute clear and convincing evidence of actual intent.  *Kramer v. Sooklall (In re Singh)*, 434 B.R. 298, 311-12 (Bankr. E.D.N.Y. 2010) (citation omitted).

In this case, other than presenting an unsupported theory that the Defendant took money from the Debtor that he should not have, the Trustee failed to prove that the Defendant received the transfers with actual intent to defraud.  According to the Defendant's testimony, which the Trustee did not rebut, he only received the reimbursements for money that he personally advanced to keep the business running.  Trial Tr., p. 26.  The Trustee failed to prove the existence of any badges of fraud, aside from the fact that there was a close relationship between the Debtor and the Defendant, as the Defendant was an insider of the company.  The Trustee failed to show lack or inadequacy of consideration, since the Defendant had receipts for all the reimbursements he received, which the Trustee submitted into evidence, which matched the dollar amounts of the reimbursements.  The Trustee failed to show that the Defendant's testimony was false, other than to state that it did not make sense.  In sum, the Trustee introduced no evidence to support his claim that the Defendant did not advance the subject funds.

For all of these reasons, the Court finds that the Trustee has failed to satisfy his burden of proving that the Defendant had actual intent to defraud creditors.  Therefore, the Trustee cannot avoid these transfers under § 548(a)(1)(A) or DCL § 276.[1]

**b.** *Constructive Fraud*

---

[1]    The Trustee also seeks to recover attorney's fees under DCL § 276-a.  In order to recover attorneys' fees under this statute, the Trustee must establish that the Defendant received the transfer with actual intent to hinder, delay, or defraud creditors.  *Singh*, 434 B.R. at 313 (citing *Cadle Co. v. Newhouse*, 20 Fed.Appx. 69, 74 (2d Cir. 2001)).  In this case, the Trustee has failed to show that the Defendant received the transfers with actual intent to hinder, delay, or defraud creditors.  Therefore, the Trustee is not entitled to receive attorneys' fees under DCL § 276-a.

The Trustee also asserts that the transfers to the Defendant were made without "reasonably equivalent value" under § 548(a)(1)(B) or "fair consideration" under DCL §§ 273-275 and the transfers were made while the Debtor was insolvent or rendered the Debtor insolvent.

Section 548(a)(1)(B) provides:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
>> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>
>> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>>
>> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>>
>> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>>
>> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).

The purpose of § 548 is to set aside transactions that "unfairly or improperly deplete a debtor's assets." *Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)*, 435 B.R. 866, 875 (Bankr. S.D.N.Y. 2010). Therefore, any transaction made by a financially impaired debtor for less than equivalent value is vulnerable to avoidance. *See id.* at 876. The burden is on

the movant to demonstrate the elements of a constructive fraudulent transfer claim by a preponderance of the evidence. *Id.* at 875 (citation omitted).

New York Law has a similar avoidance statute for constructive fraudulent conveyances. A person challenging the transfer of a debtor's property as constructively fraudulent must show that it was made without fair consideration under DCL § 272 and either (1) the debtor was insolvent or was rendered insolvent by the transfer, DCL § 273; (2) the debtor was left with unreasonably small capital, DCL § 274; or (3) the debtor intended or believed that it would incur debts beyond its ability to pay when the debts matured, DCL § 275. *Sharp*, 403 F.3d at 53; *Singh*, 434 B.R. at 309.

While the Bankruptcy Code does not define "reasonably equivalent value," this term has substantially the same meaning as the interpretation of "fair consideration" under the DCL, which can be shown by a "fair equivalent" value for the property received. *See* N.Y. Debt. & Cred. § 272; *Garcia v. Garcia (In re Garcia)*, 494 B.R. 799, 808 (Bankr. E.D.N.Y. 2013). Fair consideration under the DCL also requires good faith on the part of the transferee, which may be satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent schemes. *Singh*, 434 B.R. at 309. Aside from this element, courts use the term "reasonably equivalent value" interchangeably with the DCL's "fair consideration" for purposes of analyzing constructive fraud claims under both statutes. *Id.*

The Trustee failed to show that the Debtor's transfers to the Defendant were not for reasonably equivalent value. As discussed previously, the Trustee submitted into evidence hundreds of receipts that the Defendant claims represent funds he advanced for the Debtor, which were the basis for the reimbursements he received. Each set of receipts matched exactly

to a reimbursement given by the Debtor to the Defendant.  The Trustee even stipulated to the fact that the amount in the receipts matched the amount in the reimbursements.  Trial Tr., p. 76.  The Trustee's main argument in support of his fraudulent conveyance claims is that the Debtor did not receive any value in exchange for the transfers because the Defendant could not specifically link the receipts to the Debtor as the Debtor's name did not appear anywhere on those receipts. The Trustee's theory presumably is that the expenses reflected in the receipts were not incurred in the operation of the Debtor's business.  While this Court concedes this theory is plausible, the Trustee failed to prove it.  The Defendant testified that he paid money out of pocket to reimburse others for general business expenses.  The receipts are generally from hardware stores and state that the items purchased included wrenches, sockets, and other hand tools.  Trial Tr., p. 31-33. These are all items that are consistent with a construction framing business.  The fact that the Defendant failed to keep more specific books and records is not enough, standing alone, for the Trustee to avoid these transfers.  The Trustee failed to make an affirmative showing that the Debtor did not receive reasonably equivalent value in exchange for the transfers, and therefore the Trustee cannot avoid and recover these transfers from the Defendant as fraudulent conveyances.

### 4. 2nd cause of action - Unjust Enrichment

In order for a Trustee to recover funds for the estate under this theory, New York courts require "a showing that property is held under circumstances that render unconscionable and inequitable the continued holding of the property and that the remedy is essential to prevent unjust enrichment."  *Pryor v. Ventola (In re Ventola)*, 398 B.R. 495, 498-99 (Bankr. E.D.N.Y. 2008) (quoting *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 362 (2d Cir. 1999)).  A claim for unjust enrichment must involve an injustice between the two parties in an action.  *Kramer v.*

*Chin (In re Chin)*, 492 B.R. 117, 126 (Bankr. E.D.N.Y. 2013) (quoting *Songbird Jet Ltd., Inc. v. Amax, Inc.*, 581 F.Supp. 912, 926 (S.D.N.Y. 1984)).  To prevail on a claim for unjust enrichment in New York, the plaintiff must show "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  *Chin*, 492 B.R. at 125 (quoting *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)).

For the same reasons discussed earlier in the Decision, this Court finds that the Trustee has failed to prove that the Defendant was unjustly enriched by the transfers from the Debtor. The Trustee failed to prove that these transfers were inequitable, as the Defendant stated that he was merely being reimbursed for business expenses, and the Trustee did not submit any evidence to the contrary.

### 5. *8th cause of action - Breach of Fiduciary Duty*

Finally, the Trustee alleges that the Defendant breached his fiduciary duty to the creditors of the Debtor by taking these reimbursements.  A bankruptcy trustee has standing to assert claims against corporate insiders alleging injury to the debtor.  *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 122 (Bankr. S.D.N.Y. 2011).  Under New York Law, the elements of a cause of action for breach of fiduciary duty are "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct."  *Id.* at 127 (citation omitted).  Fiduciary duties include conducting corporate affairs "in good faith and with conscientious fairness, morality and honesty in purpose" and showing "good and prudent management of the corporation."  *Id.* at 128-29 (quoting *Alpert*

*v. 28 Williams St. Corp.*, 63 N.Y.2d 557, 569 (1984)).   General partners are fiduciaries of a corporation under New York law.  *Id.* at 124.

The Defendant is a fiduciary of the Debtor, as he was a 75% shareholder and partner. However, for all of the previously discussed reasons, the Court cannot find that the Trustee has sustained his burden to prove that the Defendant breached his fiduciary duty to the creditors of the Debtor.

## CONCLUSION

For the foregoing reasons, the Court finds that the funds transferred to the Defendant which are the subject of this Complaint, were the Debtor's property at the time of transfer and subject to avoidance by the Trustee.  However, the Trustee has failed to sustain his burden of proof on the causes of action alleged in the Complaint.  While the Trustee's causes of action may have been plausible, they remained unproven at the conclusion of trial.  Therefore, this Court shall enter judgment in favor of the Defendant, dismissing the Complaint.

Dated: Central Islip, New York
       November 26, 2013

                                        */s/ Robert E. Grossman*
                                        Hon. Robert E. Grossman
                                        United States Bankruptcy Judge